Good afternoon, Morgan Hector on behalf of Appellants, and may it please the Court, we are here today because in response to a 1,000-plus page petition for issuance of a rule declaring force-fed foie gras adulterated under the Poultry Product Inspection Act. Could you speak a little more slowly? Sure. In response to a 1,000-plus page petition for issuance of a rule declaring force-fed foie gras adulterated under the Poultry Product Inspection Act, defendants issued a circularly reasoned, dismissive, and ultimately inadequate denial, which we believe should be set aside by this Court on two grounds. First, the denial failed to articulate a rational explanation for the agency action. So you're jumping right to the merits, but we have a lot of jurisdictional issues to talk about first. We do indeed. That's more of a threshold issue. We can't talk about those things until we figure out if you have standing, so maybe we should talk about standing. Who are your clients? We have eight clients. There are four individuals, Michelle Schurg, Sarah Evans, Caroline Lee, Daniel Stolle, and four organizational entities, the Animal Legal Defense Fund, the Animal Protection and Rescue League, Compassion Over Killing, and the Farm Sanctuary. And so the organizations are all concerned with animals? Well, the organizational purpose for these entities are varied. As we explained in the briefing, certainly they are concerned about animal health and welfare. As a corollary, each of them is concerned about the human health consequences of eating products such as force-fed foie gras, and that's alleged in the complaint. To give a little context, the district court's order was a grant of the judgment on the pleadings. This court has to accept those allegations as true. Well, maybe we could talk about that a little bit. That's sort of one of the, I think, most vexing procedural aspects of this case, because as I understand it, what happened is you filed your motion for summary judgment, right? That's correct. And you, to get summary judgment, you needed to prove that the plaintiffs had standing, right? Not merely allege that they had standing, but prove that they had standing, correct? That's correct. Okay. And you submitted declarations in connection with your summary judgment motion, which was presumably your best evidence that the plaintiffs had standing, right? Correct. Correct. Okay. So then in response to that, the government files this motion for judgment on the pleadings. But it wasn't really a motion for judgment on the pleadings, right? That's not a thing when it comes to standing. It was really a 12B1 motion, right? A motion to dismiss the case for lack of standing. Now, there may be a fairness issue there, because the government didn't describe its brief properly, and that might be something we want to bookmark. But at that point, you know, the government has filed a motion to dismiss for lack of standing. It is appropriate for courts to consider evidence when deciding whether a plaintiff has standing. You had already put in your evidence that you say was your best evidence that your clients had standing. And so why are we speaking now in terms of the allegations that are made in the complaint? Why shouldn't we be considering the evidence when deciding whether your clients had standing? I think we can consider the evidence that we did submit in connection with the motion for summary judgment if the court is inclined. So if, as to the individuals, so this is an expensive niche food product. If we think they alleged that they can't really avoid this product, but to survive summary judgment, for us to really go forward with this case, we would need evidence to support that allegation. So we would want to see that it really is not practical for them to live their lives without eating foie gras, because it's so pervasive everywhere they go to parties or whatever, some kind of actual evidence. Could you submit such evidence? Well, I would respond to that in two ways. First, there are two individuals who, and this is... There are two people who say they're going to eat it anyway, regardless. Let's put them to the side. What if we say that we think that breaks the chain of causation? Let's talk about the two who say we can't avoid it. I think as a matter of pleading, if we're only talking about the face of the complaint, then maybe that's enough. But I would think to get past pleadings, we would need more evidence to support that. And it can't just be this conclusory statement. So could you submit evidence that would support the idea that they really can't avoid foie gras? Well, I think in their declarations, which I don't have in front of me, they did talk about the certain aspects of their life. For example, their profession. One of them was a corporate attorney, and she goes to events, and she did state that it was not practical for her to necessarily determine if she's eating in order. But she didn't explain it. So, I mean, I would think we would need menus or caterer statements about what ingredients they use. I mean, she would actually have to show evidence that when she goes to these events, foie gras is served, and it's not visible, and it's not labeled. Maybe she could show that, but maybe she can't. That's why I'm asking you, because I can't figure out if you could help her or not, or if she could help herself or not. I think if necessary, I do believe she could flesh out those statements in more detail. I'm sure that it's harder for her than somebody who is gluten-free to find out whether there's gluten in the food that's being served. Well, sure. And not to get personal, but I have a 5-year-old who has celiac disease, and I have a personal knowledge of how difficult it is. You can find out. You can, and you can't. And sometimes it's extremely difficult. You ask a server, and the server might say, yeah, it turns out later she was wrong. But isn't it a lot harder for you to avoid gluten for your daughter than it would be to avoid foie gras for your daughter? I don't think that's necessarily the case. Maybe you say you could provide more, but can you explain to us maybe what it is that you could provide that would establish that a corporate attorney can't avoid foie gras if she wants to? To take the original factual scenario that you explained, which is she did claim in her declaration, I go to parties. I can't necessarily tell what it is. If you're looking for caterer menus or more specific events, I went to a party on this date. I recall there was liver served. I don't recall whether it was foie gras liver or not. Maybe the server said, I don't know. Maybe she did anyway. It is possible that there are additional facts we could submit. I don't know that that's necessarily the case off the top of my head. I would have to confer with my client. But I do believe it's possible. But I think what's important is... You said before you've already submitted all the evidence that you could. Do you want to reconsider that? Is there a reason to remand this case? Do you feel like you've already had that opportunity or not? I think we've had that opportunity. I think we did submit declarations that we felt did satisfy standing in the summary judgment context. If we think you didn't, what should we do? Do we just dismiss now because you already did your best? I think the most important thing to keep in mind is that we need one plaintiff, essentially, to have standing for this case to move forward. I think the two individuals who are trying to avoid the consumption of foie gras in the future may not be as strongly situated as the two individuals who claim that they are consuming foie gras on an ongoing basis. Why? That seems like a bizarre argument. It seems to me that if you're choosing to eat foie gras, you've broken the chain of causation that says that someone else is harming you because of foie gras. I don't understand that argument at all, I have to say. I would respectfully disagree, and I think the case law is in accord. In the case of Bauer, for example, he believed that eating red meat was unsafe. The court certainly didn't say, oh, you think red meat is unsafe? Then just stop eating red meat. In the case of NRDC versus FDA, she thought the chemical triclosan in the soap she was using was potentially unsafe. Right, but that's so different. Everywhere you go, there's antibacterial soap. We probably have it in the bathroom here, and we can't find other soap once we're here. That's really different than foie gras, isn't it? Are these clients really rich? Are they what? Are your clients really rich? I can't recall off the top of my head. I'm just kidding, because foie gras is pretty expensive. Well, and the other thing is that with a lot of products, the problem is with the labeling, right? There might be milk out there that's made from cows treated with the bovine growth hormone, and milk that comes from cows not treated with the bovine growth hormone, and without labeling, we don't know. So we drink milk, and milk is a ubiquitous product, and we can't tell whether we're getting the allegedly bad milk or the allegedly good milk. I mean, here, we're just talking about a corporate attorney at a reception declining to eat foie gras. I mean, if she chooses to eat foie gras, she's broken the chain of causation. She's injuring herself. It's not the government that's injuring her. I don't believe that's the standard that's set forth in the case law. I think plaintiffs are not required to forego lawful activity to avoid something that they deem as harmful, assuming for purposes of this argument that— But if you got your way, they would still be foregoing foie gras because you're trying to get foie gras banned. So they're foregoing something that they think should be banned. Well, they're not foregoing it. They're choosing to eat it. It doesn't even make sense. I mean, the injury that they say they want to stop, they're incurring voluntarily. And if you won, then they couldn't eat it at all, even though they say they want to keep eating it. So it doesn't make sense. I do also want to respond to one point. I don't think it's established in the record that force-fed foie gras is this distinct, discrete entity that can always be identified. There is force-fed foie gras. There is non-force-fed foie gras. Where in the record does it say that? There's a footnote in the petition, which I can find. You have that footnote, but I didn't see anywhere where you limited your relief that you're seeking to one kind or the other, or that the rulemaking you're seeking would be limited to one kind or the other. Or that there even is one kind or the other available in the United States. Well, certainly our intent was to limit it to force-fed foie gras. And is there any evidence that force-fed foie gras and non-force-fed foie gras, if there is a difference, have different health effects? There are significant differences, yeah. The non-force-fed foie gras actually uses the natural migratory behavior of the birds to build up the liver to what would be a natural increase in size, typically about double what the normal liver is, whereas force-fed foie gras, which requires the actual tube down the throat and the injection of nutritional feed, forces the liver to expand to about ten times its normal size. But you have studies that you've cited. Do they compare the two? Certainly, yes. Where? Where is that in the record? I can find the exact site. I'll give you one second. ER 95 to 96. Force-feeding causes a rapid tenfold increase in the size of the liver. Yeah, but compared to... ER 72. That's compared to a goose that has no expanded liver, right? It's not comparing the two types of ways of expanding the liver, is it? Well, if you let me go to the second site, that's force-feeding. Second site, ER 72. The livers of migrating birds, non-force-fed, never more than double in size. But is there anything about the comparative health effects? What effect do they have on people? Is there a difference between the foie gras from force-fed geese and non-force-fed geese in affecting people? That's the question. The debilitating effects and health effects are caused by the pathological development of the liver. And there are numerous examples of distinguishing between what constitutes pathological versus non-pathological developments of the liver. But is there any study that says that geese that migrated and doubled the size of their liver don't have this pathological thing? I didn't understand the studies to be making that comparison. I can't recall a study that specifically compares the two. Like the test on mice. Was there a control group that was having non-force-fed foie gras? It was just foie gras or no, right? The Solomon study involved force-fed foie gras, to the best of my recollection. Do you want to save time for rebuttal? I would like to save five minutes for rebuttal. Well, what am I down to, 40 seconds? Yes. Maybe we'll give you an extra couple of minutes. Let's hear from your opposing counsel. Thank you. May it please the court. I'm John Cappell from the Appellate Staff Civil Division, U.S. Department of Justice. And I'm representing the Appellee Department of Agriculture on this appeal. I don't really have a great deal to add to what we already said in our briefs and to the colloquy between the court and opposing counsel. But I would emphasize that on standing, the court's question appeared to focus primarily on the causation prong of standing. But there is also an insurmountable problem with the injury in fact prong of standing as well. And that is the injury that all eight of the plaintiffs allege, both the individual and the organizational plaintiffs, is simply too speculative to support standing under Article III. Well, they have a complaint that cites medical studies that are in mice, but at least at the pleading stage, which I take it is what you have challenged so far, haven't they said that there's medical evidence that this could cause a health effect and Alzheimer's is this type of health effect and we think there's an increased risk that we're subjected to? Well, again, they have made the assertion, but there's no showing. The court also, I believe, was asking about the kind of statement that they're showing that the plaintiffs have made. And it was on summary judgment motion, so they have had their chance to show an adequate injury in fact, and they haven't done that either. But your argument so far, and maybe we will decide to consider that, but your argument so far has been the face of the pleadings, right? You have not said that what they're alleging is false. You're just saying what they're alleging is not enough. Well, that is true, but we don't see how they could supplement this in a way that would provide an adequate injury in fact. What's inadequate about saying that you have an increased health risk from something you're exposed to? I mean, that's a type of injury our court has recognized, isn't it? Yes, but there still has to be some concrete showing of a likelihood of an injury, and there is none with respect to force-fed foie gras. Well, how do we know that? Isn't that a fact dispute that's created by the evidence that they've submitted, the medical study? No, I believe that for purposes, based on the way the record stands now, they just haven't made an adequate showing, neither the individuals nor the organizations. There's simply a conclusory assertion that the individuals face a threat, and as the Supreme Court, the Appellate Division of the State of New York, in the case that we cited in our 28-J letter recently held, that was not adequate under Bauer or NRDC or any of the Second Circuit cases that they were relying on. Those are not even the law of the circuit, but again, there's nothing... Is there anything in the law of our circuit that says a health risk has to be a certain size, you know, one in a thousand people has to die from this, or some threshold like that? I'm not aware of any of these. I haven't found... I'm not aware of any case law that really... So how do we know that the risk they're pointing to is not enough? Well, certainly for purposes of the jurisdictional inquiry, the motion is dismissed. I think that this is... it's sufficient. I'm not sure we're going to go back to our old friends Iqbal and Twombly and argue that this isn't adequately... it isn't a plausible claim that there is any realistic health hazard here. That is essentially... that is the point that I was trying to make in perhaps a roundabout fashion, but that was... there's... there has to be, in our view, there has to be at least some showing of a plausible, realistic health effect. Well, they have a medical study, so you might say... I mean, to me there's maybe a Iqbal question about causation, but I'm not... it sounds like you're trying to say there's an implausibility about the injury, and they've got a medical study, and I don't know of any rule that says you have to produce five medical studies, or you have to show one person out of how many dies, or anything that really... they haven't at least met the threshold requirement. Your Honor, I would certainly not concede that the medical study, the Solomon study, actually is adequate to... that it even says that there is an injury. At the most, it suggests the need for further research and the possibility, but there's nothing the least bit conclusive about the language of the Solomon study. Well, but it doesn't... to show likelihood of injury, certainly there doesn't have to be conclusive proof that people are going to get hurt. I mean, isn't it kind of a dangerous road for us to go down to be assessing scientific evidence to decide whether it leaps over a certain hurdle for purposes of, you know, determining whether the risk is significant enough to create... I mean, aren't you on much better ground arguing causation is really a long way of... Well, we certainly believe that the causation requirement also cannot be met here. What about for the organizational plaintiffs? Because so far we've spent all the time talking about the individual plaintiffs, and I wonder if they might have a slightly better argument for standing with their organizational plaintiffs, at least under the law of this circuit as it stands now. On the one hand, to me, it seems pretty troubling to just say, well, any time an organization puts forth a declaration which says that this is relevant to our mission and we've had to divert resources as a result of the government's unlawful action, resources that we would be spending on other stuff related to our mission, that that's enough for an organization to have standing. But it seems like under current law of this circuit that is kind of all they have to do, and maybe they've done it here. So what do you think about that? Well, I don't think that the case law of this circuit is by any means crystal clear on that. I think that it can certainly be argued that the organizational plaintiffs also have to show some more harm than just the fact that this is part of their mission and because in their view the government isn't doing its job adequately. Well, no, no, it's not just that it's part of their mission, but it's part of their mission and they have to divert resources to fight what they contend is unlawful government conduct, the resources that they would otherwise be using to do something else germane to their mission. I mean, you're saying there's a requirement additional to that, or are you saying that's the requirement that they have to satisfy and they haven't satisfied it here? We're saying that they haven't satisfied it here, that they haven't shown that they have met the test that the Supreme Court laid down. How is it not? I mean, haven't they submitted affidavits that say one of our purposes is human health? We also have animal welfare as our purposes. Because the government hasn't regulated this, we are fighting this issue. That's taking resources from other things. Haven't they done all that? What haven't they done in that? Well, again, I recognize that the New York State, an appellate division case from New York State is merely persuasive authority, but that same argument was rejected there in the context, in litigation brought by ALDF making this very type of argument. And the court held that under their theory, that would mean that whenever an organizational plaintiff challenged government action or inaction, that would be sufficient. But what in Ninth Circuit law says that they need to do more? Well, again, I can't cite a case offhand, but I also can't cite a case offhand from the Ninth Circuit that would hold that there is standing under Ninth Circuit standards. It doesn't make much sense to say that you have standing just because you say we're fighting this battle and so therefore we can't fight that one. That's correct, Your Honor, and that's why this is. And it doesn't make a lot of sense to me either, but I'm just going through the cases. I mean, the en banc decision, committee versus Jornaleros de Redondo Beach. I mean, isn't that basically what happened in that case? I mean, that was from 2011. I can't say that I recall that case in particular among the Ninth Circuit's standing decisions, but I don't think that... What about fair housing of Marin versus Combs? I don't think that they're really on all fours with this case because the organizations, for one thing, and here the mission that they're primarily engaged in is animal welfare. But they say that that's not their only mission, and that they're also interested in human welfare and human health. So once they say that and they swear to it, how is that not an allegation that's enough? And how are we supposed to figure out any more than that, any more than what they say their mission is? Isn't that what their mission is then? How are we supposed to say that's not true? Well, again, looking on the face of the complaint, we don't think that they really even alleged at all that clearly that they were focusing on human health. They use the phrase animal welfare and health, and then they interpret the word health as referring to human health, but that's not... But they submitted... I mean, this gets back to the issue that we raised at the beginning, right, is that they filed a summary judgment motion, and they submitted what they now claim is their best evidence in support of standing in connection with their summary judgment motion, and the government at that point... I mean, if I was representing the government at that point, I would have immediately noticed the depositions of the declarants. I would have done a bunch of discovery requests designed to get any documentary evidence that relates to their assertion that their mission is really about putting adult... avoiding...preventing adulterated food from getting into the food chain as opposed to animal rights or whatever. But the government didn't do any of that. The government just responded to this evidentiary submission by the plaintiffs with a motion for judgment on the pleadings and talked about how the allegations weren't enough. And, I mean, if we think that it would have been appropriate for the district court to consider the state of the evidence, and if we think it might be appropriate for us to consider the state of the evidence at this point, why isn't the state of the evidence pretty bad for the government given its failure to test any of the allegations in the declarations? Again, I would emphasize that it's our view that the showing that they've made in the complaint and the declarations, it's not really...it is not adequate with respect to any of the parties, individual or organizational, and... Well, do the declarations show or purport to show that if they were not fighting this battle, they would be fighting another battle with respect to human health? I don't believe that they do, Your Honor. I believe that they're really...that they don't go that additional mile. They're in...sorry, say they're at a level of generality that doesn't show that they have a mission that is within the purview of the Poultry Act that you're trying to sustain and represent the government with respect to? That is correct, Your Honor, because the Poultry Act...and it's clear that... Once we start talking about the mission of the Poultry Act, though, aren't we talking about zone of interest and not Article III standing? Yes, the argument that the Poultry Act does... that is our zone of interest argument. And zone of interest after Lexmark is now a merits question, not a standing question, right? I don't think that's... I think that there's still a zone of interest standing. There's still prudential standing after Lexmark. But it's a merits question. It's not an Article III question. So we have to figure out... No, it is not. It's never...zone of interest, by definition, is not an Article III inquiry. It's prudential. Are you conceding at this point that the Heckler issue was decided incorrectly by the District Court? No, Your Honor, we're not conceding that. We didn't argue it below and we didn't argue it in this court. We are not... You're not defending that decision, though, either. We're not. But we are certainly...we're not affirmatively confessing error or anything approaching that. You didn't argue that theory, I take it?  And your position in your briefs is that you didn't argue that, but you argued another theory that's right. Yes, Your Honor, two other theories. The second one being the merits, the extremely deferential standard on a petition for rulemaking. And that alone should suffice. That gets to the merits again, though, right? Well, that certainly does. But we believe it would save the courts and the parties a tremendous amount of wheel spinning in this litigation. So if there are no further questions, I would urge the court to affirm on the grounds that we have argued in our briefs. Thank you. We'll give you two minutes for rebuttal. Thank you, I appreciate it. So to start, this question of causation, and I think the NRDC versus FDA, it's a second-circuit opinion, but I think it's on point, and it states that, again, this is the triclosan and so, and the court dismissed the idea that that was somehow self-inflicted because, and I quote, plaintiff's exposure to triclosan is not self-inflicted. NRDC's evidence shows that the FDA's conduct contributes to Owen's triclosan exposure because triclosan would not be available on the market but for FDA's failure to finalize its regulation. Now, if that's the causation for standard, or the standard for causation, that's met here because force-fed foie gras would not be on the market but for the FSIS's failure to issue a regulation. But why should it not be the rule that, especially when we're talking about a rare luxury product, that if it's easy to avoid, then we expect people to at least engage in some minimal effort to avoid it before we ban the product for everyone? Well, I'm not aware of an exception for high-level or elite or easily available products. But there's an obvious difference, right, between antibacterial soap, which is everywhere, and a product that is not everywhere. That's certainly a factual distinction. Whether or not it's something that's currently recognized in the law, I don't believe it is. I would also dispute factually that it necessarily is. I mean, you could go out to eat and someone could say, Oh, I'm ordering hors d'oeuvres for the table. Hey, look, we have liver. Okay, does that liver consist of foie gras? Okay, maybe. Does it consist of force-fed foie gras? Maybe. Do we put the onus on the consumer of these poultry products to determine, oh, am I eating something that's unsafe or not? Is it my job, not the FSIS's job, to go out and figure out whether this is safe for me to eat by interrupting dinner and asking the server, oh, what am I eating? How was that duck fed? Do you know how that duck was fed? Could you go talk to the chef? Could you have him call the person that shipped the liver here? I think it's impractical, and I don't think that onus is on the consumer of the poultry product. And to take another point, this— I'm sorry, you're out of time. All right, thank you very much. Thank you for your arguments, counsel. The case is submitted.
judges: Schroeder, Friedland, Chhabria